UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X

CHERYL SCHUSSHEIM,

                          Plaintiff,                  **MEMORANDUM & ORDER**
                                                          **09 CV 4858 (DRH)(GRB)**

      -against-

FIRST UNUM LIFE INS. CO.,

                          Defendant.
--------------------------------------------------------X

**APPEARANCES:**

**Wilkofsky Friedman, Karel & Cummins**
Attorneys for Plaintiff
299 Broadway- Suite 1700
New York, New York 10007
By: Mark L. Friedman

**Begos Horgan & Brown LLP**
Attorneys for Defendant
327 Riverside Avenue
Westport, Connecticut 06880
By: Patrick W. Begos

**HURLEY, Senior District Judge:**

       Plaintiff, Cheryl Schussheim, brings this action under the Employee Retirement Income Security Act ("ERISA"), 29 USCS § 1001 *et seq*., challenging defendant's denial of her long-term disability insurance benefits.  Presently before the Court is plaintiff's motion to amend the complaint pursuant to Fed. R. Civ. P. 15.  For the reasons stated below, the Court grants the motion.

## I.   BACKGROUND

In February of 2004, plaintiff began receiving long-term disability ("LTD") benefits through an employee benefit plan sponsored by her employer, and administered by defendant First Unum Life Insurance Company.  (Compl. ¶ 16.)  On July 28, 2008, these benefits were terminated by defendant even though plaintiff alleges that there was "no improvement or change whatsoever in [her] physical condition." (*Id.* ¶ 17.)  Plaintiff administratively challenged that decision, but defendant denied the application, as well as plaintiff's subsequent internal appeal. (Letter dated 12/1/10, attached to the Proposed Am. Compl. as Ex. 4.)  Plaintiff filed the present ERISA claim in this Court on November 9, 2009.

Less than a month after filing her complaint in this action, plaintiff applied for Social Security benefits ("SSDI").  That application was approved by the Social Security Administration ("SSA") on November 4, 2010, retroactive to October 28, 2003. (SSA Decision, Pl.'s Ex. 3.)  Two weeks after receiving this decision, plaintiff's counsel forwarded the SSA approval of benefits to defendant's counsel and requested that plaintiff's claims and appeal determinations be reopened at the administrative level. (12/1/10 letter.)  Defendant denied the request stating that the Plaintiff "had not cited any legitimate basis for [her] demand that First Unum re-open the closed administrative record and provide an additional review under these circumstances." (*Id.*).

Plaintiff then filed a letter motion on December 30, 2010 to Magistrate Judge Wall, seeking to compel defendant to reopen the administrative determination for reconsideration and reinstatement of her benefits in light of the SSA decision. (Letter Motion dated 12/30/11, docket no. 24.)  Magistrate Judge Wall denied this motion, and plaintiff appealed the Order to me. (*See* Order dated 2/9/11.)  This Court subsequently upheld the decision, noting *inter alia*:

Plaintiff's request . . . disregards the content of her own pleading. As noted above, the complaint seeks review of defendant's denial of plaintiff's disability claim prior to the issuance of the SSA decision. The pleading, in its current state, does not implicate the propriety of any decision made by defendant after that point. To the extent that plaintiff suggests defendant acted arbitrarily and capriciously in denying plaintiff's requests to re-open her case file below, no such allegation is made in the complaint, and plaintiff has not moved to amend or supplement her complaint accordingly.

(Order dated 5/19/11 at 6.)

Plaintiff now moves to amend her complaint.  The proposed amended pleading asserts that under defendant's own internally mandated procedure, defendant is required to reopen plaintiff's administrative claim in light of the SSA award. (Proposed Am. Compl. ¶¶ 24-25.) This purportedly mandatory procedure is found in defendant's Claims Manual, which states that when a claimant supplies "additional information," regarding a benefits claim determination, First Unum must "determine if the previous claim should be re-opened or if a new claim should be marked up." (The Benefits Center Claims Manual: Re-opening a Claim ("Re-opening Provision"), Pl.'s Ex. 6.)  The Claims Manual further states that upon review of a claim, First Unum must "give any SSA award of disability benefits . . . significant weight under certain circumstances in making the disability determination."  (The Benefits Center Claims Manual: Social Security Award of Disability Benefits ("SSA Provision"), Pl.'s Ex. 7.)   Aside from these additional claims—embodied in the second and third causes of action of the new pleading[1]—that defendant's termination of benefits should be reopened at the administrative level, plaintiff's amended pleading mirrors the original complaint.

---

[1] Plaintiff's third cause of action seeks related relief in the form of an expansion of the administrative record to include "all documents relating to Defendant's refusal to consider the SSA determination."  (Proposed Am. Compl. ¶ 32.)

3

## II.   DISCUSSION

### a.   Standard of Review

Under Rule 15(a), the Court "should freely give leave [to amend a pleading] when justice so requires." Fed. R. Civ. P. 15(a); *AEP Energy Servs. Gas Holding Co. v. Bank of Am., N.A.*, 626 F.3d 699, 725 (2d Cir. 2010).  However, a district court may deny a motion to amend where there is "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).  "The standard for futility with respect to a motion to amend under Rule 15 is identical to the standard for a Rule 12 (b)(6) motion to dismiss — namely, the court must determine whether the allegations in the complaint state a claim upon which relief can be granted." Amna v. New York State Dep't of Health, 2009 U.S. Dist. LEXIS 127139, *4 (E.D.N.Y. Sept. 3, 2009)(citation omitted).

To survive a motion to dismiss [under 12(b)(6)], a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

### b.   Allegations Regarding Violations of the "Terms of the Plan"

As noted above, the thrust of plaintiff's new allegations is that defendant's own claims manual mandates that the matter be reopened at the administrative level in light of her SSA award, and that upon reconsideration, her SSA award be afforded "significant weight."

Under ERISA, a plaintiff is entitled to bring a civil action "to recover benefits due to [her] under the terms of [her] plan, [and] to enforce [her] rights under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B).  Defendant argues that the "plan," as it is referred to in that provision, "is restricted to the document established or adopted by the plan sponsor" (plaintiff's employer, in this case), and does not encompass the Claims Manual.  According to defendant, the "contract between First Unum and the sponsor," does not mandate that the Defendant reopen her claim and "does not require First Unum to permit an administrative appeal at all." (Def.'s Opp. at 6.) Those requirements, as mentioned earlier, are found solely in the Claims Manual.   Plaintiff does not dispute that the Re-opening Provision and the SSA Provision exist exclusively in the Claims Manual, and that no similar provision can be found in the main policy document.  Rather, plaintiff argues that the Claims Manual may be considered part of the administrative record in evaluating defendant's benefits termination decision, and that the two previously identified provisions contained in the Manual are controlling.

Defendant supports its position by citing to a recent Supreme Court case in which the Court reemphasized the importance of focusing on the terms of the benefit plan itself. (D's Opp. at 6 (citing *Cigna Corp. v. Amara*, --- U.S. ---, 131 S. Ct. 1866, 1877 (2011)).)   This focus on the actual terms of the plan arose in that case through an apparent conflict between the *terms* of an ERISA plan, and a *summary* of those terms – a conflict which the district court found to be misleading. *See Amara*, 131 S. Ct. at 1872.  Under 29 U.S.C. § 1022, policy administrators are required to furnish plan participants with "summary plan descriptions" written "in a manner calculated to be understood by the average plan participant, and  . . . sufficiently accurate and comprehensive to reasonably apprise such participants and beneficiaries of their rights and obligations under the plan."  After *Amara*, to the extent that the language of a "plan summary"

conflicts with the actual terms of the plan, the terms of the plan control. *See Amara*, 131 S. Ct. at 1878 ("[S]ummary documents, important as they are, provide communication with beneficiaries *about* the plan, but [] their statements do not themselves constitute the *terms* of the plan for purposes of [29 U.S.C. § 1132] (a)(1)(B).") (emphasis in original). Defendant urges that a similar distinction between the terms of the ERISA plan and the Claims Manual be found here, precluding the Court from incorporating into the benefit plan any provisions found exclusively in the Claims Manual.

While the Claims Manual may not alter the terms of the benefit plan, the Court will not foreclose plaintiff's new claim in the present circumstances simply because the re-opening provision is found in the former and not the latter. The *Amara* Court's holding was based on three concerns: (1) the text of the statute requiring the creation of plan summary descriptions distinguishes between plan summaries and the plan itself;[2] (2) because the plan administrator (defendant First Unum, in this instance) authors the plan summary, whereas the plan itself is negotiated by both parties, giving legal effect to the plan summary would allow the administrator to effectively change the terms of a contract without the consent of plan sponsor (typically the employer); and (3) binding parties to the language of a summary document would defeat the purpose of creating a summary description written "in a manner calculated to be understood by the average plan participant," as "simplicity and comprehensibility" would necessarily be sacrificed to the "language of lawyers." *Amara*, 131 S. Ct. at 1877-88.

None of these concerns are present in the context of defendant's Claims Manual. Most importantly, in contrast to *Amara*, the cited Manual provisions here—the purported analogue to the plan summary in *Amara,* which were authored by defendant—do not conflict with either the language of ERISA, or the subject policy plan. Rather, they provide for the operations and

---

[2] See the excerpt from 29 U.S.C. § 1132 (a)(1)(B) on the preceding page.

procedure by which First Unum, the administrator of the policy, determines who is "disabled." Notably, the *Amara* decision preserved a court's ability to "look outside the plan's written language in deciding what those terms [mean]." *Amara*, 131 S. Ct. at 1877 (citing *UNUM Life Ins. Co. of America v. Ward*, 526 U.S. 358, 377-79 (1999), wherein the terms of an ERISA plan were permitted to be interpreted vis-à-vis state insurance rules).  Although defendant contends that "the proposed amendment does not seek to enforce 'the terms of the plan,'" (D.'s Opp. at 6), that is precisely what plaintiff is ultimately attempting to do in seeking to amend the pleading. When all the dust settles, plaintiff seeks a determination that she is "disabled" under her plan. The Claims Manual speaks to the methods by which defendant determines the applicability of that term to a particular claimant.

Where, as here, the "administrator or fiduciary [is given] discretionary authority to determine eligibility for benefits or to construe the terms of the plan," a court's review of the administrative termination is limited to whether defendant acted in an "arbitrary and capricious" manner. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989).  That review is further limited to the administrative record.  Nevertheless, as plaintiff rightly points out, courts in this Circuit routinely consider the content of an administrator's claims manual because "it was also available to [the defendant] when it was evaluating plaintiff's claim." *Nelson v. Unum Life Ins. Co. of America*, 421 F. Supp. 2d 558, 573 (E.D.N.Y. 2006); *see also Zuckerbrod v. Phoenix Mutual Life Ins.Co.*, 78 F.3d 46, 50 (2d Cir. 1996)(holding that the insurer's partial denial of coverage was arbitrary and capricious in light of a "policy" set forth within the insurer's medical claims manual of "resolving doubts in claims determinations in favor of the claimant."); *Taaffe v. Life Ins. Co. of N. Am.*, 769 F. Supp. 2d 530, 534 (S.D.N.Y. 2011).  The Court does not view the

holding of *Amara* to abrogate this practice.  Indeed, a review of the Claims Manual may prove essential in determining whether defendant acted arbitrarily or capriciously in this instance.

Plaintiff's proposed amended complaint alleges that defendant was aware of the provisions of the Claims Manual when plaintiff sought to re-open her claim, but that defendant refused to follow its mandates. (Proposed Am. Compl. ¶¶ 24-26.)  Under the terms of defendant's Claims Manual, when the company receives "additional information" relevant to a closed claim, it must determine if the previous claim should be reopened, or if a new claim should be "marked up."  (Re-opening Provision.)   Further, defendant must afford "any SSA award of disability benefits significant weight under certain circumstances in making the disability determination."  (SSA Provision.)  Only if there is compelling evidence that the SSA decision is 1) based on an error of law or abuse of discretion; 2) inconsistent with applicable medical evidence; or 3) inconsistent with the definition of disability contained in the policy, would defendant not be required to give the SSA award significant weight in its determination. (*Id.*)  Additionally, if there is other evidence that clearly shows that the claimant is not disabled, then the Defendant is also not required to give the SSA award significant weight. (*Id.*)

Here, plaintiff has sufficiently stated a claim for relief that the decision not to re-open her claim was arbitrary and capricious as it relates to the terms of the plan, *to wit*: plaintiff alleges that she provided the defendant with additional information in the form of a SSDI award from the SSA in an effort to have her claim re-opened at the administrative level. (Proposed Am. Compl. ¶ 22.)  Plaintiff further claims that defendant's prior statement that one "must apply for SSDI while receiving disability benefits," is contrary to the language of the Claims Manual. (*See id.* ¶¶ 27-28.)

c. *Violations of ERISA*

ERISA allows litigants to bring claims for equitable relief for violations not just of the terms of a plan, but for violations of the ERISA statute as well. *See* 29 U.S.C. § 1132 (a)(3). Plaintiff alleges that defendant's refusal to reopen her claim violated 29 U.S.C. § 1133(2), which requires an administrator to "afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim." (*See* Proposed Am. Compl. ¶ 30.) Defendant counters that it gave plaintiff this opportunity through the appeal of her initial disability termination, and that neither this provision, nor the attending regulations of the Department of Labor, require a second administrative review or the reopening of a fully administered claim. (D's Opp. at 7.)

However, plaintiff cites this statutory provision not in the context of defendant's initial administrative denial of her benefits, but in the context of her request to reopen that prior claim. (*See* Proposed Am. Compl. ¶ 30.) As noted above, the Claims Manual states that "[w]hen additional information or a new claim for is received on a closed claim, we must determine if the previous claim should be re-opened or if a new claim should be marked up." (Re-opening provision.) While defendant may be correct that ERISA does not require reopening a claim after it has been closed, the Claims Manual here potentially does. In other words, if defendant is required under the manual to reopen the claim, or "mark up" a new one, then defendant's subsequent determination on that new or reopened claim may also require a full and fair review. The parties have not addressed this particular issue, nor can the Court make such a determination at the pleading stage. The Court will therefore allow this allegation to proceed.

### III.    UNDUE DELAY AND DILATORY MOTIVE

Finally, defendant argues that plaintiff acted with undue delay and with a dilatory motive in seeking leave to amend.  The basis for this argument is grounded primarily on the argument that plaintiff could have applied for Social Security benefits while her claim was being decided at the administrative level, but chose not to do so.  In fact, defendant notes, she filed this civil action here before applying for those benefits with the SSA.  This version of events, however, does not tell the entire story.  While it is true that plaintiff did not file for SSDI benefits during her administrative proceeding, defendant provides no authority to suggest that this is in any way required or expected of her.  Indeed, whether the plan required plaintiff to have filed with the SSA at that point is one of the issues raised in her new pleading.  Second, while it is also true that she filed her SSA application after filing the instant case here, she actually waited only a month to do so.

More to the point, however, the question of undue delay and dilatory motive relates to the timing of her motion to amend the pleading, not the timing of the events that give rise to the underlying allegations.  If the timing of those preceding events has any bearing on these proceedings, it relates to the merits of her claims, not the propriety of lodging her new allegations at this stage in the case.  With that backdrop in mind, the Court notes that within two weeks of receiving her SSA approval, plaintiff forwarded the decision to defendant's counsel with a request to reopen the case.  Then, within a month of receiving a letter from defendant denying her request, plaintiff sought relief from Judge Wall.  Each subsequent application to this Court leading up to the present request for leave to amend was likewise made within a reasonable time.  The Court therefore finds that plaintiff did not act with undue delay or dilatory motive in bringing the present motion.

**IV.    CONCLUSION**

For the foregoing reasons, plaintiff's motion to amend is granted. Plaintiff shall file the amended pleading as a new docket entry within two weeks of the entry of this Order.  Defendant shall respond thereto within fourteen days of service.  *See* Fed. R. Civ. P. 15(a)(3).


SO ORDERED.

Dated: Central Islip, New York
       July 13, 2012                                         _____/s_____
                                                             Denis R. Hurley
                                                             United States District Judge